IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VICTOR DELGADILLO PARRA,**          CASE NO. 2:10-cv-891
                                      CRIM. NO. 2:07-cr-222
    **Petitioner,**               JUDGE EDMUND A. SARGUS, JR.
                                      MAGISTRATE JUDGE KEMP
v.

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, has filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's response, and the exhibits of the parties, as well as the record in the underlying criminal case.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> Parra pled guilty in 2008 to conspiracy to possess with intent to distribute over one kilogram of heroin, and conspiracy to distribute heroin resulting in serious bodily injury or death (the "resulting-in-death count"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), (b)(1)(C), and 846. The convictions arose from Parra's role in a large heroin-trafficking conspiracy that resulted in the death of a young man to whom Parra sold the drug.

> Parra's convictions carried mandatory-minimum sentences of 10 and 20 years' imprisonment, respectively. Prior to sentencing, however, the government filed a motion under Sentencing Guidelines § 5K1.1 for a downward departure from the 20-year term because Parra provided "substantial assistance" in the investigation of his co-conspirators. The district court granted that motion at sentencing, and reduced Parra's offense level by one point. That reduction yielded a new Guidelines range of 151 to 188 months' imprisonment for the resulting-in-death count. The district court denied Parra's request for a further reduction based on his "minor" or "minimal" role in the conspiracy, pursuant to Guidelines § 3B1.2. The court then sentenced Parra to 200 months' imprisonment on the resulting-in-death count, to run concurrently with the mandatory 120-month sentence on the other count.

*United States v. Parra,* 347 Fed.Appx. 202, unpublished, 2009 WL 3170404 (6th Cir. October 2, 2009).

At his sentencing hearing on June 26, 2008, in addition to the term of imprisonment noted above, petitioner was sentenced to five years of supervised release. *See* Judgment, Doc. #56. Petitioner filed a timely appeal, in which he asserted that the trial court erred in denying a mitigating-role adjustment and in the extent of its downward departure under §5k1.1 of the Federal Sentencing Guidelines. *See United States v. Parra, supra.* On October 9, 2009, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's judgment. *Id.*

On September 29, 2010, petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. He asserts the following claims, recited here verbatim:

2

>Issue 1: Mr. Gatterdam's failure to investigate constitutes ineffective assistance of councel in violation of the Sixth Amendment of the United States Constitution.
>
>Issue II: Mr. Parra is entitled to an evidentiary hearing.

It is the position of the respondent that petitioner's claims are without merit.

## CLAIM ONE

The focus of petitioner's claim is that his counsel was ineffective during the sentencing phase of his case and that this resulted in petitioner's receiving a greater sentence than his equally culpable co-defendant. Petitioner sets forth several examples of what he believes constituted counsel's ineffective assistance at sentencing. For example, petitioner contends that his counsel failed to investigate the facts of his case as required to avoid the "cruel and unusual punishment" of petitioner's sentence. According to petitioner, his counsel did not obtain "documents" to prove whether the drug that resulted in death was supplied by petitioner or someone else.

Further, petitioner argues that his counsel failed to investigate the substance of the agreement reached between his co-defendant and the government and did not obtain evidence of the alleged quantities of drugs involved. As a result of this alleged failure to investigate, petitioner asserts that his counsel was not properly prepared at sentencing to challenge the insufficiency of the government's motion for downward departure or the length of the sentence imposed. Petitioner asserts that he qualified for the same 2 to 4 level reduction in sentence received by his co-defendant rather than the one-level reduction offered by the government.

In response, the respondent contends that after petitioner's guilty plea, counsel had no further obligation to investigate. Further, it asserts that petitioner's counsel provided effective assistance in connection with petitioner's sentencing by objecting to the PSR, filing a lengthy sentencing memorandum, and arguing for a sentence reduction because of petitioner's minimal or minor role in comparison to his co-defendant.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

"Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context. " *Hawke v. Klee*, 2007 WL 2641477, *3 (E.D. Mich. Sept. 6, 2007) *citing United States v. Stevens*, 851 F.2d140, 145 (6th Cir. 1988).  "'[A] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel.'" *Id. quoting Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999). To establish an ineffective assistance of counsel claim in the sentencing context, a petitioner must show (1) that counsel's representation fell below the objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the sentence would have been different. *Id. citing United States v. Harris*, 894 F.Supp. 20, 26 (D.D.C. 1995).

The record demonstrates that all of petitioner's arguments are without merit. First, petitioner claims that his counsel failed to obtain documents proving whether the drug which resulted in death was provided by petitioner or someone else.  In his signed plea agreement, petitioner admitted that he was guilty of conspiracy to distribute heroin, resulting in serious bodily injury or death. (Doc. #32).  At petitioner's change of plea hearing held February 21, 2008, Agent Timothy Reagan from the Drug

Enforcement Agency testified, in relevant part, as follows:

> MR. REAGAN: On August 29 of 2007, law enforcement responded to a report of an overdose death at 4584 Pebble Beach Drive in Grove City. The deceased was identified as Arthur Eisel, IV. The Franklin County coroner's office ruled the cause of death as the result of acute heroin intoxication.
>
> Statements obtained by agents from cooperating individuals identified Casares as the heroin dispatcher and Delgadillo [Parra] as the individual who delivered the heroin to Arthur Eisel, IV, amongst others, the day before his death. It was this heroin that caused the death of Arthus Eisel, IV.

Change of Plea Transcript (Doc. #60), p. 16.

In response to this testimony, the following colloquy occurred between the Court and petitioner:

> THE COURT: ... Mr. Parra, there was a statement that was given in open court by Special Agent Timothy Reagan of the DEA. Were you able to hear the entire statement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Was the statement correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Any part of the statement incorrect?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you offering to plead guilty to conspiracy to possess with intent to distribute and to distribute over 1 kilogram of heroin because you've committed that offense?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you also offering to plead guilty to

> conspiracy to possess with intent to distribute heroin resulting in serious bodily injury and death because you committed that offense as well?
>
> THE DEFENDANT: Yes, sir.

*Id.* at 17.

Based on the above exchange, the Court gave petitioner the opportunity to challenge the fact that he distributed the drug resulting in death. Petitioner stated that the fact was correct. As a result, the source of the drug resulting in death was established by petitioner's own admission and defense counsel had no reason to provide documentation at the sentencing hearing directed to the drug's source. Similarly, petitioner's argument that counsel "failed to investigate and obtain evidence of the quantities of drugs the government alleged Mr. Parra was involved with in the instant offense" fails because of petitioner's admission in both his plea agreement and under oath at his change of plea hearing that over 1 kilogram of heroin was involved. Consequently, petitioner cannot establish that counsel's alleged failure in connection with the sentencing hearing to investigate either the source or the quantity of the drugs involved was objectively unreasonable under *Strickland*.

Petitioner also asserts that his counsel failed to investigate the circumstances of his co-defendant's cooperation agreement under which his co-defendant received a lesser sentence. As a result, petitioner claims that defense counsel was unprepared to object to the disparity at sentencing. At the sentencing hearing, the issue of the disparity between the two sentences based on the level of cooperation was discussed at

7

some length as follows:

> THE COURT: Before I hear from Mr. Gatterdam on this, I do want to raise one issue with both counsel. I am, of course, charged in the sentencing statute, 3553(a), to avoid unwarranted sentencing disparities. There is a codefendant in this case that I have also sentenced to 180 months. He began at the same offense level. He has a higher criminal history than this defendant. In each case the government asked for a one-level reduction.
>
> So, Mr. Spartis, if we could go back to you, if you could perhaps, for my benefit, compare the relative degree of cooperation of each of these defendants.
>
> MR. SPARTIS: ...it is my understanding that Mr. Contreras provided more substantial information than Mr. Delgadillo Parra.
>
> THE COURT: In reviewing the memoranda, one mentions names. One doesn't. Is that the primary distinction here?
>
> MR. SPARTIS: That's correct, Your Honor.
>
> THE COURT: Mr. Gatterdam, you may address this at this juncture of when we get to your sentencing memorandum.
>
> MR. GATTERDAM: Judge, I think I would briefly indicate here I think it's more appropriate for me to address this under the 3553(a)(6) factor because I do think it does deal with the sentencing disparity issue.
>
> ...
>
> THE COURT: If I could focus you and Mr. Spartis on the issue I originally raised, I know you don't have access to the codefendant's presentence report. But, of course, I do, and the U.S. Attorney's office did. It is true there was a criminal history category of II in that case, there was a prior, but it was based on one DUI. But the record of the codefendant was not as clean as this defendant, but it was not – on a scale of I to VI, as the guidelines take us, it was a very low II or a high I, which would otherwise make these two identical.

8

The government has represented there has been a difference in cooperation that caused the difference in the recommended sentence. So I would really like to hear from both of you on that precise issue, why there is a difference between these two defendants.

MR. GATTERDAM: Well, in our view, obviously, there is a difference between these two defendants. We feel very differently than the government. While, yes, I would agree if that's the only offense that Mr. Contreras had, but nonetheless he was a criminal history II –

THE COURT: Well, he ended up with one point for the DUI, and he was on an unsupervised period of probation that resulted in the second point because this offense occurred during that time period.

MR. GATTERDAM: Okay. He still in our view was more of the, if you will, supplier or had the head role in this organization. And, again, that is not to say that Mr. Parra doesn't deserve a severe sentence; but when looking at unwarranted sentencing disparities, you look at the criminal history being higher, you look at the relative roles of the individuals involved, and then you look at the substantial assistance, and I believe that the government agrees that my client provided substantial assistance, but due to the fact that he had a – I realize the Court hasn't ruled that he had a minor minimal role in this, he couldn't give them the names because all he did was deliver the drugs and then return the money to Contreras.

So I would ask the Court not to penalize my client because he didn't have the information. And that's essentially I think where the government is. They are saying, don't give Victor Parra as low a sentence not because he lied but because he just didn't have the information to give. And I think that's a little unfair, given his role and given the criminal history in this matter.
...

THE COURT: Mr. Spartis, what [is] the government's view?
...

MR. SPARTIS: I would just make these few points, Your Honor. It

9

is my understanding that Mr. Parra was not forthcoming when he was initially interviewed by the agents and the prosecutor in this case.  And in fact it's my understanding that he tried to place blame on a third codefendant who was only involved in this for a short period of time.

THE COURT: To be clear on the record, I am going to treat this as going to the 5K1.1 motion.  This is not in the presentence report, I believe, is it?

MR. SPARTIS: Correct.

THE COURT: I want to be careful that we don't take away the opportunity to be heard on factual allegations that have not been established.

MR. SPARTIS: That's correct.

THE COURT: If you can address just the motion for reduction based on his cooperation with the government.

MR. SPARTIS: Right. And my understanding is that the codefendant was simply a lot more forthcoming in the information provided.  Mr. Parra was reluctant at first, and then it was limited in the second or third proffers that were conducted with Mr. Parra.  And that's the basis for the different recommendation on levels of reduction.

THE COURT: Mr. Gatterdam, you may respond if you wish.

MR. GATTERDAM: I would disagree with his desire to be forthcoming.  Perhaps there was additional information provided in a second.  There were only two proffers.  And, again, I stand on what I have indicated previously, that that's due in large part to the fact of what his role was in this.  He could not provide them names of individuals because he didn't know that.  So I don't think, again, under the (a)(6) factors, unwarranted disparities against codefendants, that should be held against him.
...
THE COURT: Mr. Spartis, on that, as to the level of cooperation, you may respond.

10

>           MR. SPARTIS: I have nothing further, Your Honor.
>
>           THE COURT: The government's position is that in terms of role, would you agree or disagree that Mr. Parra and Mr. Contreras's role, there was not a lot separating them out, and they were on the same level?
>
>           MR. SPARTIS: Yes, I viewed them equally as partners.
>
>           THE COURT: And the government's recommendation between the two defendants has to do with the degree of cooperation?
>
>           MR. SPARTIS: That's correct.

Transcript of Sentencing Hearing, (Doc. #61), at 7-8, 14-16, 17-19.

The above exchanges demonstrate that defense counsel was fully prepared at the sentencing hearing to discuss the issue of the disparity in the sentences between petitioner and his co-defendant. Further, defense counsel made similar arguments in his sentencing memorandum in support of a sentence between ten and fourteen years. *See* Defendant Victor Delgadillo Parra's Sentencing Memorandum (Doc. #52). Defense counsel clearly understood that the distinction between petitioner and his co-defendant resulted from their levels of cooperation. In light of this, defense counsel argued that, due to the nature of petitioner's more minor or minimal role in the conspiracy, petitioner simply did not have as much information to provide as did his co-defendant. Further, defense counsel asserted that petitioner should not be penalized simply because he lacked more information. The fact that the Court ultimately was not persuaded by counsel's arguments does not support an ineffective assistance of counsel

11

claim under *Strickland*.

Further, petitioner has not demonstrated his counsel's ineffective assistance based on his assertion that he qualified for a more significant downward departure – two to four levels - as opposed to the one level reduction he received. Under 18 U.S.C. §3553(e), a district court is permitted to sentence below a mandatory minimum sentence "[u]pon motion of the Government, ... so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." In petitioner's plea agreement, the government agreed to recommend a downward departure if petitioner provided substantial assistance. *See* Plea Agreement (Doc. #32). The government filed a motion for downward departure asking for a one-level reduction. As discussed above, petitioner's counsel argued for a more significant reduction than what the government proposed. The Court granted the government's motion for a one-level reduction. Whether to grant a downward departure for substantial assistance and the extent of any such departure are issues completely within the Court's discretion. *See United States v. Jones*, 417 F.3d 547, 550 (6th Cir. 2005). As a result, petitioner cannot show that counsel's conduct in connection with the one-level reduction in petitioner's sentence was objectively unreasonable as contemplated by *Strickland*.

Because petitioner has not met the first prong of the *Strickland* with respect to his claim, the Court need not consider the issue of prejudice. However, to the extent that petitioner may be asserting that the length of his sentence demonstrates prejudice, he

12

has not provided anything beyond "pure speculation" to suggest that his sentence would have been different under any circumstance. If "one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Last v Palmer*, 2010 WL 3259830, *9 (E.D. Mich. Aug. 18, 2010) *quoting Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).

## CLAIM TWO

Petitioner's second claim is actually a request for an evidentiary hearing. This request will be denied. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir.1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir.1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted); *Phillips v. United States*, 2010 WL 546493, *3 (E.D.Tenn. February 10, 2010). Every one of petitioner's assertions are contradicted by the record. Given the lack of support offered for petitioner's claims, an evidentiary hearing is not required and will not be ordered.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED.** Further, because there is no filing fee for a writ of habeas corpus pursuant to §2255, the motion for leave to proceed *in forma pauperis* (#67) is denied as moot.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written

objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal, the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                              /s/ Terence P. Kemp_____
                              United States Magistrate Judge